# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8063 | **DATE** | 1/14/2003 |
| **CASE TITLE** | Xavier Lewis vs. William Henderson | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted. Status hearing set for 2/25/03 is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

*Amy J St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 1 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 58 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | U.S. DISTRICT COURT CLERK | date mailed notice | |
| TH✓ | courtroom deputy's initials | 03 JAN 14 PM 2: 42 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

XAVIER J. LEWIS, SR., )
)
Plaintiff, )
)
v. )   98 C 8063
)
WILLIAM J. HENDERSON )
POSTMASTER GENERAL, UNITED )
STATES POSTAL SERVICE, )
)
Defendant. )

DOCKETED
JAN 1 5 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Plaintiff Xavier J. Lewis, an African-American male, suffers from a learning disability

and a shoulder injury. He claims that the United States Postal Service failed to accommodate his

mental and physical disabilities, discriminated against him because of his race, retaliated against

him after he asked for an accommodation, and retaliated against him after he filed an EEOC

complaint against Defendant. Defendant has moved for summary judgment on all counts. For

the reasons stated herein, Defendant's motion is granted.

### UNDISPUTED FACTS

**I.      Lewis' Mental And Physical Limitations.**

Lewis cannot read or write due to a learning disability. (R. 56-1, Pl.'s Supp. Statement of

Material Facts ¶2.) Lewis' learning disability also affects his analytic reasoning and orientation.

(*Id.* ¶3.) Because of his mental condition, Lewis needs assistance in order to care for himself on

a daily basis. (*Id.* ¶4.) At the time that Defendant hired Lewis, it knew of his mental limitations.

(*Id.* ¶7.)



As discussed in detail below, Lewis injured his shoulder during his employment with Defendant. This injury limited his ability to perform tasks at work. After the injury, he was not able to lift his arms above shoulder level or lift items that weighed more than 20 pounds. (R. 56-1, Pl.'s Supp. Statement of Add'l Material Facts ¶12.) The injury also restricted him from performing some household tasks, including mowing the law, making home repairs, carrying groceries, mopping the basement and working in the yard. (Valerie Andrews-Lewis Dep. at 43.)[1] Despite his mental and physical maladies, Lewis is able to complete some basic functions, including brushing his teeth, dressing himself, walking, seeing, hearing, and speaking. (R. 36-1, Def.'s Statement of Material Facts ¶44.)

## II. Lewis' Employment With Defendant.

Lewis began working for the Postal Service in December 1994 as a laborer/custodian at its Processing and Distribution Center in Carol Stream, Illinois. (*Id.* ¶¶2-3.) Throughout Lewis' employment with the Postal Service, Paul Kaminsky was his supervisor. (*Id.* ¶7.)

While working as a laborer/custodian, Lewis' duties generally included maintaining and cleaning the exterior and interior areas of the facility and making minor repairs to the building and equipment. (R. 12-1, First Am. Compl. ¶10.) Although the parties disagree as to many of Lewis' specific duties, they do agree that he was at least responsible for "cleaning, scrubbing, waxing, polishing floors, washing walls and ceilings, dusting, cleaning hardware and toilet fixtures, washing windows, caring for lawns and shrubs, [and] cleaning sidewalks and driveways by removing ashes, snow and ice." (R. 36-1, Def.'s Statement of Material Facts ¶5; R. 45-1, Pl.'s

---

[1] Lewis also suffers from asthma, which only limits his ability to shovel. (R. 36-1, Def.'s Statement of Material Facts ¶44.) Despite his asthmatic condition, Lewis' failure to accommodate and retaliation claims only relate to his learning disability and his shoulder injury.

Statement of Material Facts ¶5.)  In order to complete his necessary tasks as laborer/custodian, Lewis had to be able to lift up to 70 pounds, carry heavy loads of more than 45 pounds and reach above his shoulder.  (*Id.* ¶6.)[2]

## III.   Lewis First Injures Himself.

Lewis says he injured his shoulders as a result of lifting flattened or empty cardboard boxes on December 22, 1995.  (R. 36-1, Def.'s Statement of Material Facts ¶9.)  He did not inform anyone about this alleged injury until almost eight months later in October 1996, however, when he refused to lift something heavy.  (*Id.*)  Kamisky thereafter instructed Lewis to obtain a doctor's statement in order for the Postal Service to relieve him of the lifting duty.  (*Id.* ¶11.)  Lewis returned with a letter from his doctor that stated that Lewis had tendinitis in both of his shoulders and that he should not lift any object over 20 pounds.  (*Id.* ¶12.)  Lewis then requested a temporary light duty assignment.  (R. 12-1, First Am. Compl. ¶25.)[3]

---

[2] Plaintiff neither admitted nor denied this statement of fact by Defendant.  (R. 45-1, Pl.'s Statement of Material Facts ¶6.)  It is therefore admitted.  *See* Local Rule 56.1(b)(3)(B) ("All material facts set forth in the [56.1] statement . . . will be deemed admitted unless controverted by the statement of the opposing party."); *Stevens v. Navistar Int'l Transp. Corp.*, No. 99 C 7683, 2002 WL 31398835, at *3 (N.D. Ill. Oct. 23, 2002).

[3] In many instances, Plaintiff denied Defendant's statement that Lewis requested a light duty assignment and submitted an affidavit as evidence supporting the denial.  The evidence is improper, however, because it directly conflicts with allegations in his Complaint.  A plaintiff's factual assertions in his complaint are binding judicial admissions.  *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995).  Because Lewis has made a judicial admission, he cannot introduce evidence to controvert it.  *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir.1996) ("A judicial admission trumps evidence . . . . This is the basis of the principle that a plaintiff can plead himself out of court"); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir.1987) (holding that "a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment" with contradictory affidavits).  Accordingly, the Court has deemed Defendant's Statements ¶¶13, 19, 20, 22, 26, 27, 29, 30, 37, 38 as admitted and undisputed.

3

## IV. Defendant Issues Lewis Temporary Light Duty Assignments.

On October 9, 1996, Defendant approved a temporary light duty assignment request for Lewis for October 7 to October 21, 1996, restricting him from lifting more than 20 pounds. (R. 13-1, First Am. Compl. ¶26.) A few weeks later, the Postal Service transferred Lewis to bathroom duty so he would not be required to vacuum or lift his arms to dust the offices. (R. 36-1, Def.'s Statement of Material Facts ¶14.) Lewis' duties while on this assignment included policing the bathrooms for garbage, cleaning the doors and windows and mopping the corridors. (R. 56-1, Pl.'s Supp. Statement of Add'l Material Facts ¶13; R. 45-1, Pl's Statement of Material Facts, Ex. 1.)

Kaminsky explained these responsibilities to Lewis and told him to call for help if he encountered a garbage bag that was too heavy for him. (R. 36-1, Def.'s Statement of Material Facts ¶15.) Lewis believed that he knew which items on bathroom duty weighed more than 20 pounds. (*Id.* ¶17.) After the meeting with Kaminsky, Lewis was able to explain to his doctors what his work duties were. (*Id.*, Ex. 7 at 95-96.) They, in turn, explained to Lewis his restrictions. (*Id.*)

On November 26, 1996 and again on January 30, 1997, the Postal Service approved of temporary light duty assignment for Lewis. The first, effective from November 25 to December 25, 1996, restricted Lewis from shoveling snow or lifting more than 25 pounds. (R. 36-1, Def.'s Statement of Material Facts ¶19.) The second ran from January 29 to February 28, 1997. It also restricted Lewis from shoveling snow, but it lowered the weight restriction to 20 pounds. (*Id.* at ¶20.)

4

## V.    Lewis' Injuries Continue.

Lewis suffered an injury on February 20, 1997, when he strained his chest-wall pulling a garbage bag out of a container. (R. 36-1, Def.'s Statement of Material Facts ¶21.) On March 3, 1997, he provided Defendant's Medical Unit with a Return to Work Verification form, along with a diagnosis by his physician that Lewis had bursitis in his shoulders and bronchial asthma. (*Id.* ¶22.) The physician also stated that Lewis should remain on light duty, with no mopping or "high lifting" of anything that weighed more than 20 pounds. (*Id.*) On March 4, 1997, Defendant made a decision not to adhere to the physician's recommendation and did not issue a light duty assignment in compliance with it. (*Id.*)

Lewis claims that he was injured on the job again on March 5, 1997. (R. 36-1, Def.'s Statement of Material Facts ¶23.) Defendant issued Lewis a warning on March 21, 1997, because it believed he was performing his duties in an unsafe manner. (*Id.* ¶24.) The warning cited his February 20th injury and charged him with intentionally exceeding his restricted lifting limit. (*Id.*) Lewis responded by filing a union grievance. (*Id.*) Eventually, Defendant settled the grievance by reducing the warning to an "official discussion." (*Id.*)

On March 24, 1997, Lewis suffered another on-the-job injury. (R. 36-1, Def.'s Statement of Material Facts ¶25.) That injury resulted in Defendant issuing more light duty assignments. The first assignment, effective March 24 to April 24, 1997, restricted Lewis from lifting, pushing or carrying anything that weighed more than 20 pounds. (*Id.* ¶26.) The second assignment, which ran April 10 to April 24, 1997, raised the weight limit to 25 pounds. (*Id.* ¶27.) The third assignment, effective April 23 to May 23, 1997, added shoveling, mopping, and "working in dusty areas without adequate ventilation" to his restrictions. (*Id.* ¶29.) The fourth assignment, in

5

operation from May 21 to June 21, 1997, called for "no lifting, pushing, pulling, shoveling over 20 lbs." (*Id.* ¶30.) It also restricted his time spent continuously mopping to 10 minutes. (*Id.*) On June 23, 1997, Defendant issued a fifth and final light duty assignment that merely continued the restrictions that were in effect until July 19, 1997. (*Id.* ¶37.) In August 1997, Lewis' physician eliminated his lifting restrictions. (R. 56-1, Pl.'s Supp. Statement of Add'l Material Facts ¶12.)

## VI. Interview With EEOC And Threat Of Termination.[4]

On May 1, 1997, an EEOC counselor/investigator wrote a letter to Lewis on Postal Service letterhead to "discuss the alleged discriminatory matters you raised on your EEO request for precomplaint counseling forms." (R. 56-1, Pl.'s Supp. Statement of Add'l Material Facts, Ex. P.) The EEOC representative sent a copy of the letter to the Manager of Maintenance. (*Id.*) On May 6, 1997, Defendant's Manager of Processing and Distribution said to Lewis, "I just found out about everything; you are not going to be here much longer, I'm telling everyone to fire you." (R. 36-1, Def.'s Statement of Material Facts ¶28.)

## VII. The Light Duty Committee's Actions And Lewis' Termination.

Defendant has a Light Duty Committee that reviews light duty usage at the Carol Stream office, ensures that management properly approves temporary light duty in accordance with regulations, and determines whether employees are abusing temporary light duty privileges. (R. 36-1, Def.'s Statement of Material Facts ¶33.) On June 12, 1997, the Light Duty Committee issued a letter scheduling an interview with Lewis for the next day to review the status of his

---

[4] The parties have not submitted any statements of fact that provided any context to why this letter was issued, or when or if Lewis contacted the EEOC for precomplaint counseling.

light duty requests and assignments. (*Id.* ¶32.) Lewis, along with a union representative, attended the interview. (*Id.* ¶34.)

Less than a week after the interview, the Light Duty Committee ordered Lewis to submit to a Fitness for Duty Examination to determine whether his physical restrictions were temporary or permanent. (R. 36-1, Def.'s Statement of Material Facts ¶¶35-36.) Lewis never submitted to the Fitness for Duty Examination. (*Id.* ¶38.) In August 1997, Defendant submitted some of Lewis' medical records to its contract physician for review. (*Id.* ¶39.) That physician concluded that Lewis was unfit for duty "due to multiple medical problems which are chronic and progressive in nature." (*Id.*)

Based on the physician's report, Defendant notified Lewis on September 8, 1997, that he would be terminated effective October 11, 1997. (*Id.* ¶40.) The notice stated that "[b]ecause the condition giving rise to [his] physical restrictions is permanent in nature, [he was] no longer eligible to request or receive temporary light duty . . . ." (*Id.*) The notice informed Lewis that his removal was not "disciplinary in nature, but rather an administrative necessity in light of [his] permanent physical restrictions." (*Id.*)

## VIII. Lewis' Formal EEOC Complaints.

Lewis filed a formal EEOC complaint on August 15, 1997. (R. 36-1, Def.'s Statement of Material Facts, Ex. 12.) On the section of the form that asked for the type of discrimination that Lewis encountered, he checked the retaliation and disability boxes. (*Id.*) Next to the disability portion, Lewis listed "Mental Impairment (Learning Disability)." (*Id.*) Lewis attached to his complaint a six page chronology of events. (*Id.*) In the chronology, Lewis mentions his shoulder injury and Defendant's alleged refusal to accommodate his injury. (*Id.*)

7

On January 16, 1998, Lewis filed a second formal EEOC complaint. (R. 36-1, Def.'s Statement of Material Facts, Ex. 13.) This time, Lewis only checked the retaliation box. (*Id.*) He did attach, however, an eleven page chronology, which listed his shoulder injury on several occasions. (*Id.*) Lewis did not allege in either formal EEOC complaint that he was discriminated against because of his race. (*See id.*, Exs. 12, 13.)[5]

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts

---

[5] According to representations in Court on October 1, 2002, Defendant has re-hired Lewis. Neither party has argued that this re-hiring has any effect on the outcome of this motion.

nonmovant's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

Because they are won and lost on intent and credibility, the summary judgment standard is applied with added rigor in employment discrimination cases. *Vanasco v. National-Louis Univ.,* 137 F.3d 962, 965 (7th Cir. 1998). Therefore, "summary judgment is improper if the plaintiff offers evidence from which an inference of . . . [d]iscrimination may be drawn." *Fuka v. Thomson Consumer Elecs.,* 82 F.3d 1397, 1402-03 (7th Cir. 1996). The evidence must be "construed as favorably to [Lewis] as reason and the record permit." *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 272 (7th Cir. 1996).

## ANALYSIS

Lewis' First Amended Complaint contains five counts. In Count I, Lewis alleges that Defendant did not reasonably accommodate his mental and physical disabilities. In Count II, Lewis claims that Defendant retaliated against him when he requested accommodations for his mental and physical disabilities. In Count III, Lewis alleges that Defendant retaliated against him after he filed EEOC charges of discrimination. In Count IV, Lewis maintains that Defendant engaged in racial discrimination in violation of Title VII. In Count V, Lewis claims that Defendant engaged in racial discrimination in violation of 42 U.S.C. § 1981.

Defendant seeks summary judgment on all counts. First, it argues that it is entitled to judgment on Count V because a former federal employee cannot sue his former employer for an alleged violation of his constitutional rights under Section 1981. Second, Defendant maintains that it is entitled to judgment with respect to Plaintiff's racial discrimination allegations in Count IV and his failure to accommodate his physical disability claims in Count I because Lewis failed

to exhaust his administrative remedies. Third, Defendant argues that it is also entitled to judgment on the physical disability claim in Count I because his shoulder injury did not render him disabled or lead Defendant to regard him as disabled under the rehabilitation act. Fourth, Defendant claims that it is entitled to judgment with respect to both the physical and mental discrimination claims in Count I because Lewis was not otherwise qualified to perform the essential functions of his position with or without reasonable accommodation. Fifth, Defendant maintains that it is entitled to judgment as a matter of law with respect to Count I because Plaintiff cannot show that it failed to reasonably accommodate Lewis' disabilities. Sixth, Defendant argues that it is entitled to judgment in Counts II and III because Lewis cannot establish that he was subject to retaliation.

## I.     Plaintiff's Section 1981 Claim Fails.

Plaintiff claims in Count V that Defendant violated 42 U.S.C. § 1981 by racially discriminating against him. As Defendant points out, Title VII is the exclusive remedy for employment discrimination against the federal government. *Brown v. General Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Therefore, Section 1981 does not apply to discrimination claims against the federal government. *Espinueva v. Garrett*, 895 F.2d 1164, 1165 (7th Cir. 1990).[6] Accordingly, Plaintiff's Section 1981 claim cannot survive. Defendant is entitled to judgment as a matter of law with respect to Count V.

---

[6] Plaintiff did not respond with an argument why this case law is not applicable and binding here.

**II.    Plaintiff Failed To Exhaust His Administrative Remedies With Respect To The Alleged Racial Discrimination; He Exhausted His Administrative Remedies With Respect To The Alleged Shoulder Disability Discrimination.**

Defendant argues that Lewis failed to exhaust his administrative remedies with respect to his racial and shoulder disability discrimination. Defendant contends that Plaintiff did not base his EEOC complaint on those forms of discrimination.

Generally, a plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). There are two purposes behind this rule. First, it affords the EEOC and the employer an opportunity to settle the dispute through conference, conciliation and persuasion. *Id.* at 44, 94 S.Ct. at 1017. Second, it gives the employer some warning of the conduct about which the employee is aggrieved. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

### A.    Plaintiff did not Mention Race in his EEOC Charges.

A review shows that race was neither mentioned in the complaints nor the attachments to the complaints. Indeed, Lewis does not contest this fact. Accordingly, Defendant is entitled to judgment as a matter of law with respect to Count IV.

### B.    Plaintiff did Sufficiently Address his Shoulder Injury in his EEOC Charges.

Lewis contends that he still has a viable physical disability claim. Plaintiff concedes that he did not mention the Defendant's failure to accommodate his shoulder disability where the EEOC forms requested the type of discrimination encountered. He argues, however, that the Court should look to the body of the EEOC complaints and the attachments, where he explicitly

11

discussed his shoulder injury.

It is well settled that "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110. On the other hand, a Title VII plaintiff does not need to allege in an EEOC charge each and every fact that combines to form the basis of each claim in his lawsuit. *Cheek*, 31 F.3d at 500. The Seventh Circuit applies a two step test in determining whether an EEOC charge sufficiently encompasses the claims in a complaint. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). First, a court determines whether there is a reasonable relationship between the allegations in the charge and the claims in the complaint. *Id.* Second, a court decides whether the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* The second step requires a court to "speculate" as to what the EEOC might discover during the course of an investigation. *Cheek*, 31 F.3d at 500. Further the Court should consider allegations outside the body of the charge if the charging party intended the agency to investigate such allegations. *Id.* at 502.

The Court finds that Plaintiff's allegations in the EEOC complaint were sufficient to constitute an exhaustion of his administrative remedies with respect to his shoulder injury. This case is similar to *EEOC v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 640 (N.D. Ill. 1988). In that case, the EEOC charge only mentioned race discrimination where the EEOC form requested the type of discrimination suffered. *Id.* The charge did not mention sex discrimination as a legal theory. *Id.* The factual narrative, however, included an allegation that could be construed liberally to imply discrimination against women. *Id.* The Court found that there was a

reasonable relationship between the allegations in the EEOC charge and those in the complaint. *Id.* It therefore upheld the plaintiff's claims. *Id.*

Here, Lewis only mentioned his mental disability in the portion of the charge that asked the type of discrimination he suffered. Plaintiff did allege in the body of his EEOC complaint and in his attachments, however, that his shoulder injury precluded him from mopping and that Defendant threatened to terminate him if he refused to mop. Lewis further claimed in the EEOC charge that Defendant chose not to honor his doctor's restrictions. In doing so, Lewis maintained that Defendant allowed Plaintiff to further injure himself and aggravate his condition.

It is clear that Lewis intended the EEOC to investigate the circumstances surrounding his shoulder injury and Defendant's refusal to comply with his doctor's restrictions. The narrative in the EEOC complaint is filled with factual assertions about his shoulder injury. Accordingly, Defendant is not entitled to judgment as a matter of law relating to his claims for failure to accommodate his shoulder disability on the grounds that Plaintiff failed to exhaust his administrative remedies.

## III. The Undisputed Facts Show That Defendant Did Not Engage In Disability Discrimination.

To state a *prima facie* case of disability discrimination for failure to accommodate the disability, a plaintiff must show: (1) that he is disabled; (2) that his employer was aware of his disability; (3) that he was an "otherwise qualified individual" for the job; and (4) that the adverse employment action was motivated by the disability. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033-34 (7th Cir. 1999). The only issues here are whether Lewis was disabled and whether Lewis was an "otherwise qualified individual."

### A. There is an Issue of Material Fact as to whether Plaintiff was Physically Disabled.

If Plaintiff's condition does not rise to the level of a disability, then he cannot recover under the ADA even if Defendant treated him adversely because of his condition. *Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998); *Stevens v. Navistar Int'l Transp. Corp.*, No. 99 C 7683, 2002 WL 31398835, at *4 (N.D. Ill. Oct. 23, 2002). For purposes of its motion, Defendant admits that Plaintiff's learning disorder rendered him disabled under the ADA. Defendant argues, however, that Plaintiff's shoulder injury did not render him disabled, because Plaintiff cannot show that he is unable to perform tasks central to most people's daily lives.[7]

The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment."

42 U.S.C. § 12102(2). The Court must interpret these terms "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, ___, 122 S.Ct. 681, 691, 151 L.Ed. 2d 615 (2002). Here, the Court only will analyze the first definition, because Plaintiff has created an issue of material fact as to whether he was substantially limited in his activities that precludes the Court from entering judgment on

---

[7] Neither party made any arguments concerning the duration of Plaintiff's injury and whether it has any impact on determining whether he is physically disabled. The Court only raises this point because of the parties' representations that Plaintiff has been rehired by Defendant. The Court has not been told whether Plaintiff's shoulder injury has healed or what tasks he is currently performing. For the purpose of the ADA, "[t]he impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Ky.*, 534 U.S. at ___; 122 S.Ct. at 691.

Defendant's behalf on the disability grounds.

Those claiming protection must "prove a disability by offering evidence that the extent of the limitation . . . in terms of their own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999). The Supreme Court has recently held that "household chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives." *Toyota Motor Mfg.*, 534 U.S. at ___, 122 S.Ct. at 693.

Plaintiff's shoulder injury allegedly precludes him from extending his arms to his shoulder level or from lifting more than 20 pounds. Recently, the Seventh Circuit has doubted whether a plaintiff's inability to lift more than 10 pounds due to a back problem substantially limited that person from engaging in a major life activity. *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002). Therefore, the limited lifting restriction alone is not enough for Lewis to be labeled disabled. Defendant argues that Lewis cannot be disabled, because he can perform some basic tasks, such as brushing his teeth, getting dressed, walking, seeing, hearing, and speaking.

Plaintiff responds that he is disabled because he cannot perform some household tasks, including mowing the law, making home repairs, carrying groceries, mopping the basement, and working in the yard. (Valerie Andrews-Lewis Dep. at 43.) Some of those tasks are central to a person's daily lives. At this point, therefore, there is enough evidence to create a material issue of fact as to whether his shoulder injury is a disability as defined by the ADA.

**B.** **Plaintiff was not "Otherwise Qualified" as a Result of his Shoulder Injury to Perform the Essential Functions of his Position.**

Defendant claims that it is entitled to judgment in Count I because Lewis was not otherwise qualified to perform the essential functions of his position with or without reasonable accommodation. To show that he is an "otherwise qualified individual," a plaintiff must prove that he has the proper "training, skills, and experience" for the job and that he is able to "perform the essential functions of the job, either with or without reasonable accommodation." *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996). Lewis bears the burden of proving the existence of these prerequisites. *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001). That Lewis was a laborer/custodian for many years before his shoulder injury shows that, despite his mental state, he was an "otherwise qualified individual." *See Bultemeyer*, 100 F.3d at 1284. The key issue, therefore, is whether the shoulder injury rendered him unqualified for the position because he could no longer perform the essential functions of the job even if the Postal Service had reasonably accommodated him.

Plaintiff's response to Defendant's argument is inconsistent. While he claims that "he could continue to perform the same duties as he performed before his shoulder injury," (R. 44-1, Pl.'s Mem. in Opposition to Def.'s Motion at 2) he also states that his physician would allow him to perform only his light duty assignment tasks – such as mopping, sweeping, and dusting. (*Id.* at 18.) And even with these tasks, he could not lift "excessive weight" or lift his arms above the shoulder level. (*Id.*) In essence, while arguing that he can now perform the tasks that he did before the shoulder injury, Plaintiff also claims that he can only accomplish those tasks that he performed while on light duty.

Another piece of evidence shows that Plaintiff's physical disability claim cannot stand, even given reasonable inferences. The duties that he was undeniably performing before his shoulder injury were those of "cleaning, scrubbing, waxing, and polishing floors; wash[ing] walls and ceiling; dust[ing] furniture and fixtures; clean[ing] hardware and toilet fixtures; wash[ing] windows; car[ing] for lawns and shrubs; clean[ing] sidewalks and driveways and remov[ing] ashes, snow and ice." (R. 36-1, Def.'s Statement of Material Facts ¶5.) It is undisputed that the "functional requirements" of his position included "heavy lifting up to 70 pounds, heavy carrying of 45 pounds and over, 8 hours of pushing, [and] reaching above the shoulder . . . ." (*Id.* ¶ 6.)

Plaintiff's assertion that he can perform these tasks is in direct conflict with the testimony that he relies upon to prove that he suffers from a shoulder disability. That evidence showed that Lewis could not work in his yard, mop, or carry groceries. (*See* Valerie Andrews-Lewis Dep. at 43.) It is inconceivable that Lewis, while at work, could perform the essential functions of the job (lawn care, heavy lifting of up to 70 pounds, heavy carrying of 45 pounds, eight hours of pushing, and above shoulder work), yet could not, while at home, carry grocery bags, work in his yard, or mop his basement. Plaintiff cannot have it both ways. Lewis is only entitled to *reasonable* inferences in the evidence at this stage. The evidence he offers to prove the existence of a physical disability and that to show he is "otherwise qualified" to perform the essential duties of his position is incompatible. The Court will therefore negate Plaintiff's contention that he can perform the essential functions of his job. *See Hrobowski v. Runyon*, No. 97 C 5608, 2001 WL 290193 (N.D. Ill. Mar. 16, 2001) (Where plaintiff failed to explain conflict in claims concerning her disability and assertions that she was "otherwise qualified," court entered summary judgment in favor of defendant). Because it is not a reasonable inference, given Lewis'

17

evidence in favor of a determination that he has a physical disability, the Court finds that Plaintiff is not "otherwise qualified" to perform the essential functions of a laborer/custodian.

Lewis next asserts that he was an "otherwise qualified individual" because he could perform the essential tasks required of him while he was on light duty assignment. The problem with this contention is that Seventh Circuit has held an employee is not "otherwise qualified" under the ADA if he is only qualified to perform a light duty assignment:

> the ADA does not require an employer that sets aside a pool of positions for recovering employees to make those positions available indefinitely to an employee whose recovery has run its course without restoring that worker to her original healthy state. A person is "otherwise qualified" within the meaning of the ADA only if she can perform one of the regular jobs (with or without an accommodation).

*Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). Because Plaintiff is not "otherwise qualified" to perform the essential functions of his permanent position, his physical disability discrimination claim cannot stand. Accordingly, Defendant is entitled to judgment with respect to the claim that it failed to reasonably accommodate his shoulder disability.[8]

## C. Plaintiff Cannot Show that Defendant Failed to Reasonably Accommodate His Mental Disability.

Under the ADA, employers must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an

---

[8] Even if the Court were to overlook the fact that Lewis was not "otherwise qualified," Defendant would still be entitled to judgment with respect to the shoulder disability claims. Plaintiff has not shown that Defendant failed to reasonably accommodate his shoulder disability. Plaintiff claims that a reasonable accommodation would have been to maintain light duty assignment. This argument suffers from the same flaw as did its "otherwise qualified" argument. An employer is not required, as a reasonable accommodation, to convert temporary "light duty" jobs into permanent ones. *Malabarba v. Chicago Tribune Co.* 149 F.3d 690, 697 (7th Cir. 1998).

applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Lewis claims that Defendant failed to accommodate his mental disability while he was on light duty assignment. Lewis argues that even though Defendant put him on a light duty assignment that in theory restricted him from lifting more than 20 pounds, the assignment failed its purpose because his mental disability did not allow him to determine what items weighed 20 pounds. Lewis claims without the ability to make this distinction in weight, he re-injured his shoulders by continuing to lift heavy items.

Section 501 of the Rehabilitation Act "imposes an affirmative duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion." *McWright v. Alexander*, 982 F.2d 222, 225 (7th Cir. 1992) (internal quotations and citations omitted). The Seventh Circuit has found that Section 501 imposes a duty beyond evenhanded treatment. *Id.* at 226. "[A] change in the (supposedly neutral) standard operating procedure . . . is the essence of reasonable accommodation." *Id.* at 227.

As the Seventh Circuit has recently made clear, the burden of establishing that a reasonable accommodation exists rests with the employee. *Mays*, 301 F.3d at 870. "The plaintiff cannot seek a judicial remedy for the employer's failure to accommodate [his] disability without showing that a reasonable accommodation existed. But if it existed yet [he] failed to obtain it because the employer had not consulted [him] in order that 'together they can identify the employee's needs and discuss accommodation options,' the fault in the failure to make the accommodation available would be the employer's and he would lose." *Id.* (quoting *Emerson v. Northern States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001)). "[W]hen no reasonable

19

accommodation is possible the failure to jaw about accommodation is harmless." *Id.* at 871.

Here, Plaintiff cannot show that a reasonable accommodation existed. Plaintiff claims that a reasonable accommodation would have been to have someone follow him on his route to point out the items that potentially weighed more than 20 pounds. Many of these items were garbage cans that could have accumulated more than 20 pounds worth of items during Plaintiff's shift. Defendant therefore would have needed someone continually on hand to watch over Plaintiff and to initially lift the garbage can to determine whether it was too heavy. This is not a reasonable accommodation. "[T]he ADA does not require employers to create new positions." *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002); *see also Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) ("redundant staffing is not a reasonable accommodation."); *Mays*, 301 F.3d at 871 (no need to pair plaintiff with another employee to follow her around).

Instead, the accommodations that Defendant made were entirely reasonable for the circumstances. Before Lewis began his light duty assignment, Defendant briefed him on his responsibilities. An employee showed Lewis the route to follow. He was told to call for help with any garbage bags that were too heavy. He had restrictions explained to him by doctors and he understood the restrictions. Plaintiff cannot establish that Defendant did not reasonably accommodate him. The undisputed facts show that as a matter of law, Defendant is entitled to judgment in Count I because Lewis cannot establish that it failed to reasonably accommodate his disabilities.

## IV.    Plaintiff Cannot Establish That Defendant Retaliated Against Him.

Plaintiff has alleged in Counts II and III that Defendant engaged in two types of retaliation. First, he claims that Defendant retaliated against him because he requested an

20

for an accommodation[9] and the adverse action. To establish that there was a causal connection, the plaintiff must prove that the decision to act adversely towards plaintiff and the EEOC charges were not wholly unrelated. *Horwitz*, 260 F.3d at 613. Plaintiff requested an accommodation by asking for a light duty assignment in October 1996. (R. 36-1, Def.'s Statement of Material Facts ¶9.) He claims that he did not request accommodations after then. It was not until September 8, 1997 that Defendant notified Plaintiff that he would be terminated. (*Id.* ¶ 40.) The eleven month gap is therefore not a "telling temporal sequence" that raises an issue of material fact because it did not follow "fairly soon after the employee's protected expression." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (quotation omitted). Therefore, Plaintiff must bring forth additional proof of a causal nexus to make out his *prima facie* case. Unfortunately for Plaintiff, there is nothing additional that he can point to that relates to retaliation for requesting an accommodation.

### B. Lewis cannot Show that Defendant Retaliated Against him for Filing EEOC Complaints.

That brings the Court to Plaintiff's final claim: that Defendant allegedly retaliated against him for filing a complaint with the EEOC. Lewis filed a formal EEOC complaint on August 15, 1997.[10] His notice of termination was sent less than a month later. This is far less time than

---

[9] Given that this first retaliation count is based upon Plaintiff's request for an accommodation, it is odd that Plaintiff claimed in his Statement of Facts that he never requested an accommodation. In any event, the Court previously ruled that he is precluded from asserting that he did not request an accommodation. Therefore, the Court will proceed into the *prima facie* analysis.

[10] Plaintiff's theory that Defendant retaliated against him for filing complaints with the EEOC makes two pieces of evidence irrelevant. First, Lewis' EEOC filing that occurred after Defendant sent him notice of termination is immaterial because the termination decision had already been made. Second, the threatening statement in May 1997 by Defendant's Manager of

accommodation. (R. 12-1, First Am. Compl. ¶¶49-50.) Second, Lewis alleges that Defendant retaliated against him because he filed Complaints of Discrimination with the EEOC. (*Id.* ¶52.)

To prevail on a retaliation claim, a plaintiff must either offer direct evidence of retaliation or proceed under a burden-shifting method. *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001). There is no direct evidence that Defendant terminated Plaintiff because he requested an accommodation or because he filed EEOC complaints, so the Court will analyze this case using the burden-shifting test. Under this method, Plaintiff must make out a *prima facie* case of retaliation by showing: (1) that he "engaged in statutorily protected expression;" (2) that he "suffered an adverse employment consequence;" and (3) that "there is a causal connection between the protected activity and the adverse action." *Vanasco*, 137 F.3d at 968-69. If Plaintiff can establish this *prima facie* case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *Id.* Once the Defendant makes this showing, the burden shifts back to the Plaintiff to show that the Defendant's proffered reasons are pretextual and that its actual reason was retaliatory. *Id.* Even if a plaintiff's discrimination fails, a claim that a defendant retaliated against the plaintiff for complaining about the discrimination may survive. *Horwitz v. Board of Edu. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001).

### A. Lewis cannot Make out a *Prima Facie* Case of Retaliation for Requesting an Accommodation.

Plaintiff's first claim for retaliation is doomed because he cannot make out a *prima facie* claim. Specifically, Plaintiff cannot show that there was a causal connection between his request

occurred in cases where the Seventh Circuit has found a causal connection not to exist. *See Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 919 (7th Cir.2000) (three months was an insufficient temporal link); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir.1992) (four months was an insufficient temporal link); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992) (nearly six months was an insufficient temporal link).

Because Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to Defendant to produce evidence of a non-retaliatory reason for his discharge. *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1012 (7th Cir. 2000). If it can meet this burden of production, any inference of retaliation evaporates, and the burden shifts back to Plaintiff to demonstrate that the proffered reasons are pretextual and that the employment actions were based on retaliation for filing his EEOC complaint. *Id.* Defendant offers as its non-retaliatory reason that it terminated Lewis because its doctors determined that he was unfit for duty "due to multiple medical problems which are chronic and progressive in nature;" and was therefore "no longer eligible to request or receive temporary light duty." (R. 36-1, Def.'s Statement of Material Facts ¶¶ 39-40.)

Since Defendant produced a non-retaliatory reason for Lewis' termination, Plaintiff must prove that the proffered reason is pretextual. To do so, a plaintiff must show it to be "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000). If Defendant's decision to terminate was imprudent or ill-advised, the Court will not find it to be pretextual. It is not this Court's function to "sit as a kind of 'super-personnel department' weighing the prudence of employment decisions." *Gleason v.*

---

Processing and Distribution is irrelevant because it occurred before Lewis filed either of his EEOC complaints.

*Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997).

Plaintiff claims that there are three reasons why Defendant's reason for termination is a pretext for retaliation. First, Lewis asserts that he never requested light duty. Therefore, the Light Duty Committee should never have interviewed him and he should never have been required to submit to a Fitness for Duty Examination. This argument is not proper, as Lewis' allegations in his Complaint preclude him from claiming that he never requested a light duty assignment.

Next, Plaintiff claims that the proffered reason is a pretext for retaliation because out of 14 people interviewed by the Light Duty Committee, Defendant only terminated Lewis. This argument is not persuasive, because Plaintiff has not brought forth enough evidence that would lead a fact-finder to believe that the others were similarly situated to him.[11]

Finally, Lewis argues that the proffered reason is a pretext for retaliation because Defendant did not conduct its Fitness for Duty Examination in accordance with its established policies. Lewis believes that Defendant violated its policy because Defendant's physician did not examine him, instead relying solely upon medical records.

The undisputed facts show that Defendant had to rely upon submitted medical records because Plaintiff never allowed himself to be examined by its physician. The Light Duty Committee ordered Lewis to submit to an examination in mid-June, 1997. (R. 36-1, Def.'s

---

[11] Plaintiff does attach a chart that describes the limitations of the others' injuries, as well as the length of time that they have been on light duty assignment. (*See* Vist Affidavit, Ex. R.) There is no indication of whether those employees' injuries were permanent in nature, as Defendant believed Lewis' were. Further, several were treated similarly to Lewis, as the Light Duty Committee recommended Fitness for Duty Examinations on eight others. (*Id.*) Plaintiff does not indicate the outcome of those Fitness for Duty Examinations.

Statement of Material Facts ¶¶35-36.) When Plaintiff had not allowed himself to be examined by August 1997, Defendant submitted medical records to its physician in place of the examination. (*Id.* ¶39.) Defendant cannot be faulted for substituting a review of medical records for an examination of Plaintiff in this context.

Plaintiff does not argue that Defendant's physician's diagnosis was erroneous, much less that it was a misrepresentation so that it could terminate him. Plaintiff has not met its burden in establishing that Defendant's reason for termination – that it relied upon its physician's diagnosis that he was unfit for duty because of chronic and progressive medical conditions – was a pretext for retaliation. There are no disputed facts that would allow for a jury to find that Defendant's proffered reason for terminating Lewis is a pretext for retaliation. Because Plaintiff cannot establish a claim for retaliation, Defendant is entitled to judgment as a matter of law with respect to Counts II and III.

## CONCLUSION

Judgment is entered in favor of Defendant on all counts. The undisputed facts show that Defendant is entitled to judgment with respect to: (1) Count I because Lewis cannot show that it failed to accommodate a physical or mental disability; (2) Count II because Lewis cannot make out a *prima facie* showing that Defendant retaliated against him for requesting an accommodation; **(3)** Count III because Lewis cannot establish that Defendant's reason for termination was a pretext for retaliation for filing EEOC charges; (4) Count IV because Lewis failed to exhaust his administrative remedies with respect to racial discrimination; and (5) Count V because there is no claim for racial discrimination against the United States as a former employer under 42 U.S.C. § 1981. Accordingly, Defendant's motion for summary judgment is granted in its entirety.

DATED: January 14, 2003                              ENTERED

                                                AMY J. ST EVE
                                                United States District Judge